**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ST. PAUL FIRE & MARINE INSURANCE
COMPANY AND TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA**                    **PLAINTIFFS**

**v.**                                      **CIVIL NO. 1:15CV104-HSO-JCG**

**RENEGADE SUPER GRAFIX, INC., AND
GULF COAST SHIPYARD GROUP, INC.**              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS
ST. PAUL FIRE & MARINE INSURANCE COMPANY AND
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT [28]**

BEFORE THE COURT is Plaintiffs St. Paul Fire & Marine Insurance

Company and Travelers Property Casualty Company of America's Motion for

Summary Judgment [28] seeking a declaratory judgment that it owes no duty to

defend or indemnify either Defendant in this case under the terms of two insurance

policies.  After this Motion was briefed, the Court requested additional briefing

which was completed on July 13, 2016.  *See* Order [59].  Having considered the

parties' submissions, the record as a whole, and all relevant legal authority, the

Court is of the opinion that the Motion should be denied, and that Plaintiffs should

be directed to show cause by **Friday, September 30, 2016**, why the Court should

not grant summary judgment in favor of Defendants as to Plaintiffs' duty to defend

under the terms of the relevant insurance Policies.[1]  Defendants Renegade Super

Grafix, Inc., and Gulf Coast Shipyard Group, Inc., shall file any responsive

memoranda on or before **Friday, October 14, 2016**, and any rebuttal memoranda

by Plaintiffs are due on or before **Friday, October 21, 2016**.

## I. BACKGROUND

A.   State Court Litigation

In 2009, Defendant Gulf Coast Shipyard Group, Inc.[2] ("Gulf Coast"), began

construction of a vessel, the T-051, pursuant to a "vessel construction contract dated

December 18, 2006." State Court First Am. Compl. [28-3] at 17.[3] According to the

pleadings ultimately filed in the underlying state court lawsuit relevant to this

dispute, Gulf Coast hired Defendant Renegade Super Grafix, Inc. ("Renegade") "to

provide all labor and materials to sand blast, prime, fair and paint the T-051." *Id.*

[28-3] at 17. Gulf Coast and Renegade determined that the T-051 would be "painted

---

[1] Whether St. Paul and Travelers will ultimately owe a duty to indemnify Renegade may await resolution until after a determination is made on liability in the underlying state court litigation. *Hartfield Cas. Ins. Co. v. DP Eng'g Co., LLC*, No. 15-10443, 2016 WL 3552312, *5 (5th Cir. June 29, 2016) ("An insurer may have a duty to defend a lawsuit but may not have a duty to indemnify the insured.").

[2] Defendant Gulf Coast Shipyard Group, Inc., is the successor in interest to and does business as Trinity Yachts, LLC, and is in the business of yacht construction. State Court First Am. Compl. [28-3] at 1.

[3] The First Amended Complaint in the state court litigation was filed on June 2, 2014, in the Circuit Court of Harrison County, Mississippi, First Judicial District, and was styled "Gulf Coast Shipyard Group, Inc. v. Renegade Super Grafix, Inc., a Florida Corporation; Akzo Nobel Coatings, Inc., a Delaware Corporation; and International Paint, LLC, a Delaware Corporation," Civil Action No. A2401-13-232.

and faired" using the "blue topcoat Awlgrip system"[4] that would provide "top quality marine painting and fairing products." *Id.* [28-3] at 18.

Renegade began the painting and fairing work on the T-051 in mid-2010. *Id.* [28-3] at 18. In late November or early December 2011, cracks began to appear in the paint which eventually worsened into a "catastrophic failure" of the Awlgrip system. *Id.* [28-3] at 19-20. Renegade's attempts to repair the defects in the Awlgrip system during 2012 and 2013 were unsuccessful. *Id.* [28-3] at 19-20. Gulf Coast, in an effort to mitigate its damages, undertook the removal of the defective Awlgrip system and the subsequent re-fairing and re-painting of the T-051. *Id.* [28-3] at 19-20.

On October 8, 2013, Gulf Coast filed suit against Renegade, Akzo Nobel Coatings, Inc. ("Azko), and International Paint, LLC ("International"), in the Circuit Court of Harrison County, Mississippi, First Judicial District, seeking to recover approximately $7,000,000.00 in damages. The Complaint advanced the following claims: (1) Breach of Contract (Renegade); (2) Breach of Express Warranty (Renegade, Akzo, and International; (3) Fraud in the Inducement – Misrepresentations (Akzo and International); (4) Fraud in the Inducement – Omissions of Material Fact (Renegade, Akzo, and International); (5) Negligent Misrepresentation (Renegade, Akzo, and International); (6) Conspiracy to Commit

---

[4] The Awlgrip system was manufactured by Akzo Nobel Coatings, Inc., and International Paint, LLC. Gulf Coast Mem. in Opp'n [47] at 2.

Fraud (Renegade, Akzo, and International); (7) Breach of Implied Warranty of Fitness for a Particular Purpose (Renegade, Akzo, and International); (8) Breach of Implied Warranty of Merchantability (Renegade, Akzo, and International); (9) Violation of the Magnuson-Moss Warranty Act (Renegade, Akzo, and International); and (10) Deceptive Advertising (Akzo and International).  State Court First Am. Compl. [28-3] at 1, 20-37; Mem. in Supp. Mot. Summ. J. [29] at 3.

B.     Complaint for Declaratory Judgment [1] and Summary Judgment Briefing

Renegade sought defense and indemnification from Gulf Coast's claims from St. Paul Fire & Marine Insurance Company ("St. Paul") under a Marine General Liability Insurance Policy No. 0L04200970 [28-1] issued to Renegade for the period July 12, 2011, to July 12, 2012, and from Travelers Property Casualty Company of America ("Travelers") under a Marine General Liability Insurance Policy No. Z0L-10T65168-12-ND [28-2] issued to Renegade for the period July 12, 2012, to July 12, 2013.[5]  Compl. [1] at 3, 14.

On March 27, 2015, St. Paul and Travelers instituted the present lawsuit in this Court by filing a Complaint for Declaratory Judgment [1] against Defendants Renegade and Gulf Coast pursuant to 28 U.S.C. §§ 1331, 1332, 2201, and 2202. Compl. [1] at 1-2.  The Complaint asserts that the St. Paul and Travelers' Marine General Liability Insurance Policies ("the Policies") do not afford any coverage to

---

[5]  The parties do not appear to dispute that both Policies are identical save the coverage periods and the identities of the insurers.

Renegade for the alleged losses and damages suffered by Gulf Coast in the construction of the T-051.  Compl. [1] at 15.  The Complaint further alleges that since the Policies do not provide coverage, St. Paul and Travelers are entitled to a judgment declaring that they are not obligated to defend or indemnify Renegade for the claims asserted by Gulf Coast in the state court litigation.  Compl. [1] at 15-19.

On January 5, 2016, St. Paul and Travelers filed the present Motion for Summary Judgment [28] positing that, based upon the clear language of the Policies, neither owe a duty to defend or indemnify Renegade for the claims asserted by Gulf Coast in state court for damages Gulf Coast allegedly sustained as a result of Renegade's "painting and fairing the motoryacht hull number T-051" because there was no "occurrence," as defined by the Policies, and because Gulf Coast's claims against Renegade, even if covered, are "specifically excluded by several exclusions in the [P]olicies."  Mot. [28] at 1-2; Mem. in Supp. [29] at 1-2.

On February 22, 2016, Gulf Coast filed its Response [46] arguing that there was an "occurrence" such that the Policies do provide coverage for the property damage Renegade caused to Gulf Coast's T-051 yacht hull.  Gulf Coast Resp. [46] at 1-4.  Gulf Coast maintains that

> [r]eading the Policies as a whole and in the light most favorable to Gulf Coast, the nonmoving party, coverage is provided for the property damage to Gulf Coast caused by Renegade.  Renegade applied for, received, and thus paid a premium for the "Ship Repairer's Legal Liability" endorsement.  In its application for the Policies, Renegade specifically indicated that its business was "boat service & repair – painting of hulls on land."  Therefore [sic], in addition to the general "Ship Repairer's Legal Liability" endorsement, the Policies paid for by Renegade included

5

> a specific "Other Work" endorsement for "boat service and repair –
> painting of hulls."  Gulf Coast's property damage caused by Renegade
> while it faired, painted, and attempted to repair the T-051 hull must be
> covered, or both the general ship repairer's endorsement and the specific
> endorsement for painting of hulls would provide, at best, only illusory
> coverage to Renegade.  The Court should hold, therefore, that the Policies
> provide coverage to Renegade for Gulf Coast's claims in the state court
> suit.

Gulf Coast Resp. [46] at 3, ¶6.  Alternatively, Gulf Coast argues that the Policies

are ambiguous and, under Mississippi law, should be construed against the

drafters, St. Paul and Travelers.  Gulf Coast Resp. [46] at 3, ¶7.

Renegade has also filed a Response [48] and contends that any liability that

could be assessed against it in the state court litigation was predicated upon acts

that were "accidental and unintended and, as such, qualify as an 'occurrence' under

the Policies, triggering coverage."  Renegade Resp. [48] at 2; Mem. in Supp. [49] at

7-9.  Renegade argues that summary judgment would be improper and that St. Paul

and Travelers must provide Renegade a defense until such time as the state court

litigation "progresses to a point where liability can be sufficiently determined

through expert witnesses, dispositive motions and/or trial on the merits."  Renegade

Resp. [48] at 2-3.

On February 29, 2016, St. Paul and Travelers filed a Rebuttal [55] to the

Responses [46] [48] reurging their position that the Policies do not afford coverage

to Renegade because there was no "'occurrence' – no accidental, unintentional

conduct by Renegade" sufficient to trigger coverage.  Rebuttal [55] at 1.  The

Rebuttal also posits that

[t]he "Ship Repairers Legal Liability" Endorsement generally expands coverage provided by the Policies to certain types of damage incurred to watercraft while in the insured's care, custody, or control for the purpose of repair or alteration.  However, that endorsement is expressly subject to its own exclusions, as well as the terms, conditions, and exclusions of the remainder of the Policies.  Thus, the addition of the "Ship Repairers Legal Liability" Endorsement does not convert the Policies into performance bonds guaranteeing the quality of Renegade's product and work.

Rebuttal [55] at 6.

C.     Order for Additional Briefing [59]

      After initial briefing on the Summary Judgment Motion concluded, the Court ordered additional briefing on the question of what effect, if any, the rider to the Policies titled "Other Work Endorsement" had on whether coverage existed based upon decisions of the United States Court of Appeals for the Fifth Circuit in *Penthouse Owners Ass'n., Inc. v. Certain Underwriters at Lloyd's, London*, 612 F.3d 383 (5th Cir. 2010), and *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395 (5th Cir. 2008).  Order [59] at 1-3.  The "Other Work Endorsement" reads as follows:

**OTHER WORK ENDORSEMENT**

This endorsement alters the coverage provided under Section III:  Ship Repairer's Legal Liability.

In consideration of the premium charged, it is hereby mutually agreed that the following coverage is added:

Subject to prior notification and agreement of the Company, this insurance shall be extended to cover other repair operations which do not come within the scope of the ship repairing operations of the insured.

7

The gross charges incurred from such operations shall be declared to the Company and adjusted at the rate set forth elsewhere in this policy.

With respect to such operations:

(a)  the terms "ship repairers" and "ship repairing" wherever used in this policy shall be deemed to include other repair operations of the insured;

(b)  it is mutually agreed that this shall include coverage for loss of or damage to property other than watercraft[6] which is in the care, custody and control of the Insured for purpose of being worked upon including whilst in transit to or from sub-contracted repairer's or manufacturer's premises.

THE OTHER REPAIR OPERATIONS NOTED ABOVE CONSIST OF: **boat service and repair – painting of hulls**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

St. Paul's Policy [28-1] at 65; Travelers' Policy [28-2] at 46.

1.    St. Paul and Travelers' Supplemental Memorandum [60]

St. Paul and Travelers submit in their Supplemental Memorandum [60] that "the 'Other Work Endorsement' has no effect on the merits" of their pending Motion. Suppl. Mem. [60] at 1.  The "Other Work Endorsement" simply "expanded" the coverage provided in the Ship Repairer's Legal Liability section "to include liability for accidental 'property damage' to the hulls – to the extent they are not deemed 'watercraft' – in Renegade's care, custody or control for the purposes of painting." Suppl. Mem. [60] at 6.  The extension of coverage for hulls "does not render

---

[6]  The parties have not cited to any provision of the Policies which defines the term "watercraft," nor has the Court located such a provision.

inapplicable other policy exclusions, such as business risk and warranty exclusions, which would ultimately exclude coverage to Renegade for Gulf Coast's claims here," Suppl. Mem. [60] at 6, and the Endorsement "is not to be read 'in virtual isolation' but rather must be read 'in its proper context of the policy as a whole,'" Suppl. Mem. [60] at 3 (citing *Penthouse Owners Ass'n.*, 612 F.3d 383 at 387).

> 2.   Gulf Coast's Supplemental Memorandum [64]

Gulf Coast contends in its Supplemental Memorandum [64] that the "Other Work Endorsement" expands the coverage provided by the Policies in a fashion similar to "the endorsement at issue in *Delta & Pine,*" such that the Court should apply the reasoning of the *Delta & Pine* opinion to find that coverage clearly exists. Gulf Coast Suppl. Mem. in Opp. [64] at 2.  Alternatively, Gulf Coast maintains that the "Other Work Endorsement" creates "an ambiguity in the insurance policies, and, therefore, the policies should be read to provide coverage under this Endorsement for the damage caused by Renegade at issue in the underlying [S]tate court suit."  Gulf Coast Suppl. Mem. in Opp. [64] at 1-2.

According to Gulf Coast, *Penthouse Owners* is distinguishable because the endorsement at issue in that case was a "deductible" endorsement, not an endorsement like the "Other Work Endorsement" which actually expands coverage. *Id.* [64] at 4.  Under

> Mississippi law, an endorsement 'is presumed to have expressed the **exact agreement** of the parties' and thus 'controls the policy in so far as it enlarges, modifies or restricts the terms thereof, **as it is a specific statement relating to the subject involved**.'

*Id.* [64] at 6 (emphasis in original) (quoting *Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co.*, 24 So. 2d 848, 850 (Miss. 1946)).

    3.    <u>Renegade's Supplemental Brief [65]</u>

    Renegade similarly argues that St. Paul and Travelers owe a duty to defend and indemnify Renegade for Gulf Coast's claims based upon the terms of the "Other Work Endorsement." Renegade Suppl. Br. [65] at 2. Renegade posits that it paid a premium for the extended coverage added to the Policies through the "Other Work Endorsement" for Renegade's business of "painting of hulls." *Id.* [65] at 2.

> Renegade paid to be insured for services provided while painting hulls. A plain reading of the Policies indicates that Plaintiffs will pay all sums which Renegade may be obligated to pay by reason of liability as a result of performing boat service or repair – painting of hulls. In the Circuit Court Suit, Gulf Coast asserts claims that it suffered damage as a result of boat service provided by Renegade while painting the hull. The painting of the hull is the boat service provided by Renegade, and the alleged damages of Gulf Coast occurred during the performance of that service. Therefore, the claims of Gulf Coast are covered under the "Other Work Endorsement."

*Id.* [65] at 7. Renegade maintains that the "Other Work Endorsement" contained no limitations or exclusions, and that had St. Paul and Travelers intended "to extend all of the exclusions contained in the Policies," then they could have "ensured such language made it into the Endorsement." *Id.* [65] at 7. According to Renegade,

> the "Limited Sudden & Accidental Pollution – Marine General Liability" endorsement states in bold at the top of the page:

10

> **This endorsement modifies the insurance provided under this Marine General Liability policy. It is subject to all of the terms, conditions and exclusions contained in this policy, and is further subject to the additional exclusions set forth in this endorsement.**
>
> [Doc. 28-2, P.44 of 51]. No such language is present in the "Other Work Endorsement." Instead, the "Other Work Endorsement" indicates that the limitations and conditions of the Policy are only extended "as above stated," and no limitations or conditions are stated. [Doc. 28-2, P.46 of 51].

Renegade Suppl. Br. [65] at 7.

Renegade further insists that there was an "occurrence" as defined in the Policies as an "accident, including continuous or repeated exposure to the same general harmful conditions" such that coverage under the Policies exists. *Id.* [65] at 3-4. According to Renegade, to determine whether an insured's actions are intentional or accidental/inadvertent, a court must look at the facts of the particular case. *Id.* [65] at 4 (citing *Architex Associations, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1161 (Miss. 2010)). Renegade contends that Gulf Coast's claims arise out of Renegade's alleged negligence in utilizing the defective fairing and painting products, and not from Renegade's "improper work," *id.* [65] at 3-5, and that St. Paul and Travelers' interpretation of the Endorsement would render it meaningless, *id.* [65] at 7-8.

4.    St. Paul and Travelers' Rebuttal [66]

St. Paul and Travelers respond that the "Other Work Endorsement" simply acts to extend the liability coverage afforded Renegade by the Policies to "boat

service and repair – painting of hulls," Rebuttal [66] at 1-3, and that Renegade and Gulf Coast have misconstrued the plain language of "Other Work Endorsement" and failed to recognize that the Endorsement must be construed in light of the Policies as a whole, giving weight to every provision, *id.* [66] at 4.

> The "Other Work Endorsement" comprises a single page among numerous pages of [the] policy. It amends[7] the SRLL [Section III: Ship Repairer's Legal Liability], which is one portion of the policies and which is subject to all of the policies' terms and exclusions. Gulf Coast's and Renegade's readings of the endorsement seek to ignore the plain language of the endorsement, as well as numerous pages of policy, and convert the endorsement into a stand-alone policy providing coverage for any and all damage caused by Renegade while painting hulls. Such reading contravenes the very purpose of general liability policies – which is *not* to warrant the quality of an insured's work or product – and contradicts the rule that an endorsement must be read "in its proper context of the policy as a whole."

Rebuttal [66] at 8.

---

7 The actual wording of the Other Work Endorsement is that it "alters" the coverage provided under Section III: Ship Repairer's Legal Liability. *Black's Law Dictionary* does not contain a definition for the specific word "alter" but defines, in relevant part, "alteration" as "an act done to an instrument, after its execution, whereby its meaning or language is changed; esp., the changing of a term in a negotiable instrument without the consent of all the parties to it," and a "material alteration" as "a significant change in something; esp., a change in a legal instrument sufficient to alter the instrument's legal meaning or effect." *Alteration* and *Material Alteration*, BLACK'S LAW DICTIONARY (10th ed 2014). The *Concise Oxford American Dictionary* defines "alter" as "change or cause to change in character or composition, typically in a comparatively small but significant way." *Alter*, CONCISE OXFORD AMERICAN DICTIONARY (2006).

12

II.   <u>DISCUSSION</u>

A.   <u>Summary Judgment Standard</u>

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, a court "view[s] the evidence and draw[s] reasonable inferences in the light most favorable to the non-movant." *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).  Before it can determine that there is no genuine issue for trial, a court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (the nonmovant must set forth specific facts to contradict the specific facts set forth by the movant,  general averments are not sufficient).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A genuine dispute of material fact means that evidence is such that a

13

reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).

B.     Applicable Substantive Law

The Court has jurisdiction over this matter pursuant to diversity of citizenship under 28 U.S.C. § 1332.  "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  When sitting in diversity, courts usually apply the forum state's substantive law.  *See, e.g., Truong v. Bank of America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013).  Here the parties agree that Mississippi law controls the resolution of this dispute.  This Court will therefore apply Mississippi substantive law.

C.     Analysis

1.     Interpreting insurance policies under Mississippi law

This is an insurance contract dispute.  St. Paul and Travelers argue that there is no coverage because there was no occurrence as defined by the unambiguous terms of the Policies and because, even if there was an occurrence, other exclusions in the Policies preclude a finding of liability.  Renegade and Gulf Coast counter that coverage has been triggered by an occurrence as defined by the Policies, such that St. Paul and Travelers owe a duty to defend and indemnify Renegade against Gulf Coast's claims.  Alternatively, Renegade and Gulf Coast

maintain that the Policies are ambiguous based upon the language contained in the "Other Work Endorsement" which affords coverage to Renegade for "boat service and repair – painting of hulls."

In construing an insurer's duties under an insurance policy in a declaratory judgment action, a federal court applies state substantive law.

> "Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). "Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id*. at 531. "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id*.

*State Farm Mut. Auto. Ins. Co. v. Logisticare Solutions, LLC*, 751 F.3d 684, 692 (5th Cir. 2014); *see Mavar Shrimp & Oyster Co. v. United States Fid. & Guar. Co.*, 187 So. 2d 871, 875 (Miss. 1966) (finding that because the insurance company improperly refused to defend its insured in the underlying litigation, the insurance company was liable for not only the attorneys' fees, expenses, and court costs but also the cost of the settlement; however, had the insurance company provided a defense and the outcome of the litigation established that the claims were not covered by the policy, then the insurance company "would not have been liable for any judgment").

"An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy.  However, no duty to defend arises when the claims fall outside the policy's coverage." *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 970 (Miss. 2015) (quoting *Baker Donnelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006)).  An insurer's "duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." *W.R. Berkley Corp. v. Rea's Country Lane Constr., Inc.,* 140 So. 3d 437, 442 (Miss. Ct. App. 2013) (quoting *Titan Indem. Co. v. Pope*, 876 So. 2d 1096, 1101 (Miss. 2004)).  The insurer has an "absolute duty to defend a complaint which contains allegations covered by the language of the policy," independent from its duty to indemnify which is determined once the facts have been developed to establish whether the conduct of the insured giving rise to the claim falls under or outside the coverage afforded by the policy.  *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).

In interpreting an insurance policy, a court utilizes the same rules that apply to the interpretation of a contract.  *Southern Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 744 (Miss. 2013).  At the summary judgment stage, a court should first determine whether a policy is ambiguous.  *Id.* at 744 n.3.  "Mere disagreement as to the meaning of a policy provision does not render the policy

16

ambiguous." *Id.* at 744 (citation omitted). "[W]hen a contract is clear and unambiguous to [sic] its wording, its meaning and effect are matters of law." *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 717 (Miss. 2004). "Like any other contract, if an insurance contract is plain and unambiguous, it should be construed as written." *Id.* (citations omitted).

If a court identifies an ambiguity in the insurance policy and determines that the insured's interpretation of the insurance policy is reasonable, the policy must be strictly construed in favor of the insured. *Delta & Pine Land Co.*, 530 F.3d at 399; *see Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001) ("Mississippi courts strictly construe any ambiguity in an insurance policy against the insurer."); *see also U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196,198-99 (Miss. 2002).

> Any fair doubt should be resolved in favor of the insured. *Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 390 (Miss. 1978) ("It is well established that ambiguity and doubt in an insurance policy must be resolved in favor of the insured."); *Caldwell v. Hartford Acc. & Indem. Co.*, 248 Miss. 767, 160 So. 2d 209, 212-13 (Miss. 1964).

*Delta & Pine Land Co.*, 530 F.3d at 399.

"Moreover, if there is any conflict between a rider and the policy, 'the rider controls in construing the contract expressly where the provisions of the rider are the more specific.'" *Id.* at 400 (quoting *Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co.*, 24 So. 2d 848, 851 (Miss. 1946)). This proposition holds true under the laws of other jurisdictions as well. *See Ross Neely Sys., Inc. v. Occidental Fire &*

*Casualty Co.*, 196 F.3d 1347, 1350 (11th Cir. 1999) ("an unambiguous endorsement supplants conflicting general terms") (applying Alabama law); *Stewart Petroleum Co. v. Certain Underwriters at Lloyd's London*, 696 So. 2d 376, 379 (Fla. Dist. Ct. App. 1997) ("to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls"); *Mesa Operating Co. v. California Union Ins. Co.*, 986 S.W. 2d 749, 754 (Tex. Ct. App. 1999) ("Endorsements to a policy generally supersede and control over conflicting printed terms within the main policy.").

       2.      <u>St. Paul and Travelers have not carried their summary judgment burden on the record before the Court.</u>

After a thorough review of the record as a whole including the Policies, the Motion for Summary Judgment, the extensive briefing by the parties, and relevant legal authority, the Court finds that St. Paul and Travelers' Motion for Summary Judgment should be denied. When read in conjunction with the Other Work Endorsements, the "Marine General Liability" Policies issued to Renegade during the relevant coverage periods appear to the Court to at least arguably afford coverage for the claims asserted by Gulf Coast in the underlying state court litigation.

The initial issue argued by the parties appears to be whether any of the claims asserted by Gulf Coast in the state court litigation fall within the definition an "occurrence" as set forth in the Policies. The Policies state that an "[o]ccurence means an accident, including the continuous or repeated exposure to substantially

the same general harmful conditions."  St. Paul's Policy [28-1] at 41, ¶ 25; Travelers'

Policy [28-2] at 24, ¶25.

St. Paul and Travelers contend that, as a matter of law, Renegade's painting

of the T-051's hull constituted an intentional act falling outside the definition of an

"occurrence."  They further maintain that the sole contractual ramification of the

"Other Work Endorsement" was that the liability coverage afforded by the Policies

for "Watercraft" was extended to liability coverage for Renegade's work on the T-

051's hull, and that the damage claims asserted by Gulf Coast fall within the

Policies' exclusions.

While St. Paul and Travelers' argument carries some persuasive force, in the

Court's view, based upon Mississippi law, the "Other Work Endorsement" at a

minimum creates an ambiguity in the Policies as a whole.  This Endorsement

provided that liability coverage was altered to include, without limitation or

exclusion on the face of the Endorsement, "boat service and repair – painting of

hulls."  St. Paul's Policy [28-1] at 65; Travelers' Policy [28-2] at 46.  Language

clearly incorporating the Policies' exclusions appears in other sections of the

Policies, but, as Renegade points out, such language does not appear in as explicit

terms in the Other Work Endorsement.  Had St. Paul and Travelers intended to

include such language, they clearly could have done so.

Even taking into consideration St. Paul and Travelers' position that the

Policies must be read as a whole, the Court finds that there is a conflict between the

19

"Section I: General Conditions," "Section II: General Liability Coverages," and "Section III: Ship Repairer's Legal Liability" provisions that would arguably appear to exclude coverage for Renegade, and the modifying language contained in the "Other Work Endorsement" which is more specific and arguably appears to provide coverage to Renegade. Based upon the present record at this summary judgment stage of the proceedings, the Court must ordinarily construe the Policies to provide coverage based upon the specific language contained in the "Other Work Endorsement." *Delta Pine & Land Co.*, 530 F.3d at 400-01 ("the rider controls in construing the contract expressly where the provisions of the rider are more specific") (quoting *New Buena Vista Hotel Co.*, 24 So. 2d at 851).

At the very minimum, the "Other Work Endorsement" creates an ambiguity. The Policies provide in "Section I:  General Conditions" at "20. Definitions" that

> (21)   **Marine Liabilities** means the section(s), if any, including any endorsements thereto, attached to this policy subsequent to <u>Section I: General Conditions</u> and <u>Section II: General Liability Coverages</u>, which provide specific coverage(s) as set forth therein and according to their terms, conditions and exclusions, for certain liabilities arising out of the insured's maritime operations.

St. Paul's Policy [28-1] at 40; Travelers' Policy [28-2] at 23.  The "Other Work Endorsement" purports to provide liability coverage to Renegade for the "painting of hulls" but does not set out any specific "conditions and exclusions" which clearly limit liability coverage.[8]  St. Paul and Travelers have not shown at the summary

---

[8]  Compare the language contained in the "Other Work Endorsement" to the language contained in the "Limited Sudden & Accidental Pollution Endorsement –

judgment stage that any of the exclusions contained in "Section I: General

Conditions" or "Section II: General Liability Coverages" of the Policies are clearly

and unambiguously incorporated into or apply to the arguable extension of coverage

set forth in the "Other Work Endorsement." *See Delta Pine & Land Co.*, 530 F.3d at

402 (the insurer "bears the burden of showing that an exclusion applies and that it

is not subject to any other reasonable interpretation that would provide coverage");

*Penthouse Owners Ass'n, Inc.*, 612 F.3d at 386 ("an insurer bears the burden of

showing an exclusion applies and that it is not subject to some other reasonable

---

Marine General Liability" Endorsement which states that the Pollution
Endorsement is subject to "all of the terms, conditions and exclusions contained in
this policy" as follows:

> **LIMITED  SUDDEN  &  ACCIDENTAL  POLLUTION
> ENDORSEMENT – MARINE GENERAL LIABILITY**
>
> **This endorsement modifies the insurance provided under this
> Marine General Liability policy.  It is subject to all of the terms,
> conditions and exclusions contained in this policy, and it is
> further subject to the additional exclusions set forth in this
> endorsement.**
>
> .    .    .
>
> Nothing herein contained shall be held to vary, alter, waive or extend any
> of the terms, conditions, provisions, agreements or limitations of the
> above mentioned policy, other than as above stated.

St. Paul Policy [28-1] 61-62; Travelers Policy [28-2] at 44-45.  St. Paul and Travelers
could easily have included similar language in the "Other Work Endorsement," but
did not.  The fact that the Pollution Endorsement, in conjunction with its express
incorporation of the Policies' other terms, conditions, and exclusions, begins by
stating that it "modifies" the Policies, as opposed to stating that it "alters the
coverage" as the "Other Work Endorsement" purports to do, is further suggestive to
the Court of an ambiguity.

interpretation that would afford coverage") (quotation omitted); *see also Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 390 (Miss. 1978) (finding policy ambiguous because "intent of the policy by its very language is uncertain").

The Court further finds that the Policies are, at a minimum, ambiguous because Renegade and Gulf Coast have offered a reasonable interpretation of the Policies which would afford coverage.  Because under such circumstances the Policies must be strictly construed against the drafters, St. Paul and Travelers, and because the issue of coverage must be construed in favor of the insured, Renegade, summary judgment should be denied.  *See Delta & Pine Land Co.*, 530 F.3d at 399; *Goel*, 274 F.3d at 991 ("Mississippi courts strictly construe any ambiguity in an insurance policy against the insurer."); *see also Omnibank*, 812 So. 2d at 198-99.

St. Paul and Travelers have not carried their summary judgment burden, and their Motion for Summary Judgement [28] should be denied.

## III.  <u>CONCLUSION</u>

After a thorough review and consideration of pleadings, the record as a whole, and relevant legal authority, the Court concludes that Plaintiffs St. Paul Fire & Marine Insurance Company and Travelers Property Casualty Company of America's Motion for Summary Judgment [28] should be denied.  Accordingly,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiffs St. Paul Fire & Marine Insurance Company and Travelers Property Casualty Company of America's Motion for Summary Judgment [28] is **DENIED**.

22

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Plaintiffs St. Paul Fire & Marine Insurance Company and Travelers Property Casualty Company of America must show cause on or before **Friday, September 30, 2016**, why the Court should not grant summary judgment in favor of Defendants on Plaintiffs' duty to defend under the terms of the relevant insurance Policies.  Defendants Renegade Super Grafix, Inc., and Gulf Coast Shipyard Group, Inc., shall file any responsive memoranda on or before **Friday, October 14, 2016**, and any rebuttal memoranda by Plaintiffs are due on or before **Friday, October 21, 2016**.

**SO ORDERED AND ADJUDGED**, this the 15th day of September, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE